**United States District Court**
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                   NORTHERN DISTRICT OF CALIFORNIA
7
8   CLEAR CHANNEL OUTDOOR, INC.,            No. C-11-2573 EMC
9                Plaintiff,
                                           **ORDER GRANTING IN PART AND**
10      v.                                 **DENYING IN PART DEFENDANT'S**
                                           **MOTION TO DISMISS**
11  BENTLY HOLDINGS CALIFORNIA LP,
                                           **(Docket No. 21)**
12               Defendant.
13  _____/
14
15          Plaintiff Clear Channel Outdoor, Inc. has filed suit against Defendant Bently Holdings

16  California LP, raising various claims related to the lease of a rooftop advertising sign in Union

17  Square.  Plaintiff contends that Defendant has breached its lease both anticipatorily as well as

18  through past conduct, and asserts claims for declaratory judgment, breach of contract, and unjust

19  enrichment.  Pending before the Court is Defendant's Rule 12(b)(1) motion to dismiss for lack of

20  subject matter jurisdiction and Rule 12(b)(6) motion to dismiss for failure to state a claim.  Docket

21  No. 21.  After considering the parties' submissions and oral argument, and for the reasons set forth

22  below, the Court **DENIES** the motion to dismiss under 12(b)(1) and **GRANTS in PART** and

23  **DENIES in PART** the motion under 12(b)(6).

24                  I.    FACTUAL & PROCEDURAL BACKGROUND

25          This action was initiated on May 27, 2011 when Plaintiff Clear Channel ("CCO") filed suit

26  against Defendant Bently alleging breach of contract.  Plaintiff claims that Defendant has breached

27  the lease by, *inter alia,* refusing Clear Channel access to the sign, applying for permits to do work on

28

United States District Court

For the Northern District of California

1    the sign, and indicating that Defendant would not negotiate in good faith per the terms of the lease.

2    Plaintiff alleges as follows.

3        Plaintiff owns and operates a sign structure on Stockton Street, in the Union Square area of

4    San Francisco.  Complaint, Docket No. 1, ¶1 (hereinafter, Compl.).  Defendant Bently owns the

5    building to which the sign is attached.  *Id.*  Plaintiff (Tenant) and Defendant (Landlord) have a lease

6    effective June 2006, attached to the complaint.  Compl. ¶ 10; Compl. Exhibit A (hereinafter, Ex. A).

7    The lease has a term of five years.  Compl. ¶ 11, Ex. A ¶ 2.  The lease provides that it shall continue

8    after the initial term "for subsequent like terms" unless it is terminated with ninety days notice in

9    writing.  Compl. ¶ 11, Ex. A ¶ 3. The lease also contains an agreement to maintain a month-to-

10   month tenancy and engage in good-faith negotiations for a year following the "termination or natural

11   expiration of this Lease."  Compl. ¶ 11, Ex. A ¶ 5. The negotiations are to be aimed toward an

12   extension of the lease for at least 5 additional years.  *Id.*  Should these negotiations fail to produce a

13   new long-term lease within one year, Tenant CCO has the right to remove its sign structure within

14   120 days of the anniversary of the lease's termination.  Compl. ¶ 11; Ex. A ¶ 5.

15       The lease contains provisions for access and permits.  It gives Tenant "all rights of ingress

16   and egress over the Property necessary to legally access the Structure from a public roadway."

17   Compl. ¶ 15, Ex. A ¶ 1.  It also provides that Tenant "has the sole right to make any necessary

18   applications with, and obtain permits from" any governmental entities. . ."  Compl. ¶ 12, Ex. A  ¶ 5.

19   Finally, it provides that all such permits are the property of Tenant, and that Tenant "shall have no

20   obligation to pursue any zoning matter or to continue to maintain any permit."  Ex. A  ¶ 5.  The lease

21   has no specific provisions regarding Plaintiff's (Tenant's) obligations regarding maintenance.

22       In a letter sent by Defendant, dated February 4, 2011, Defendant asserted that Plaintiff had

23   failed to meet maintenance obligations and thus, according to Plaintiff, "improperly asserted that it

24   had rights of ownership in the Sign Structure by claiming to reserve for itself the right to seek

25   permits on its own."  Compl. ¶ 14.  Plaintiff also alleges that Defendant denied Plaintiff rights of

26   ingress and egress over Defendant's property to access the sign for over a month.  *Id.* ¶ 15.  Plaintiff

27   alleges that once Defendant allowed Plaintiff to access the sign and Plaintiff sent a plan of action for

28   repairs, which Plaintiff asserted were not necessary (and only done out of an abundance of caution),

United States District Court

For the Northern District of California

1    Defendant did not respond to this plan of action.  Rather, Defendant simply sent a letter on May 3,

2    2011, "claiming that CCO had breached its obligation to maintain the sign in a safe manner." *Id.* ¶¶

3    16-17.  Plaintiff asserts that in the May 3 letter Defendant also expressed its intent to refuse to

4    comply with the requirement for good faith negotiations, and improperly asserted that Clear Channel

5    had breached the lease and had lost the right to continue to keep its structure on the property.  *Id.* ¶

6    17.  Plaintiff describes a series of letters between Plaintiff and Defendant discussing repairs,

7    termination of the lease, removal of the sign structure, and access to the sign.  *Id.* ¶ 18-20.

8        Plaintiff alleges that "Defendant has repudiated CCO's rights", "intends to exercise and/or

9    has exercised control over CCO's Sign Structure and the permitting rights attendant thereto.

10   Defendant's statements and actions are in derogation of CCO's rights," and that "Defendant's

11   statements and actions are intended to appropriate CCO's property." *Id.* ¶ 21.

12       Plaintiff's claims, as numbered in the complaint, are

13       1)  For declaratory judgment.  Plaintiff alleges that there is an actual controversy over

14       ownership of the sign and permits as well as the right to apply for an obtain permits.

15       Plaintiff alleges that Defendant has "improperly attempted to terminate the lease," "refuses to

16       engage in contractually required good faith negotiations," and has materially breached the

17       lease.  *Id.* ¶ 23.

18       2)  For breach of written contract.  Plaintiff alleges that Defendant has materially breached

19       the lease by refusing to provide access, altering the sign structure, refusing to engage in good

20       faith negotiations, and asserting ownership rights by "assert[ing] permit rights vested solely

21       in CCO under the Lease."  Plaintiff claims it is entitled to injunctive and/or specific relief as

22       well as actual damages and attorney's fees for breach of contract.  *Id.* ¶¶ 28-30.

23       3)  For unjust enrichment.  Plaintiff's third claim for relief alleges that Defendant has been

24       unjustly enriched "at the expense and to the detriment of CCO." *Id.* ¶¶ 32-33.

25       Defendant moves to dismiss Plaintiff's complaint "for lack of subject matter jurisdiction,

26   because th[e] matter is not yet ripe for adjudication," and because it "fails to state facts

27   demonstrating any plausible cause of action or need for the Court's intervention."  Docket No. 21,

28   Def.'s Motion to Dismiss, *hereinafter* MTD, at 1.  Defendant argues that no duty to negotiate arose

**United States District Court**
For the Northern District of California

1    until June 2011 and that since that time parties have been negotiating.  *Id.*  Defendant also counters

2    Plaintiff's claim that Plaintiff has not been allowed access to the sign.

3                                  **II.    DISCUSSION**

4    A.      12(b)(1) Jurisdictional Challenge

5            Defendant has moved to dismiss Plaintiff's complaint for lack of lack of standing under

6    Federal Rule of Civil Procedure 12(b)(1), arguing that defendant's claim is not yet ripe for

7    adjudication.

8            "The jurisdiction of federal courts is defined and limited by Article III of the Constitution.  In

9    terms relevant to the question for decision in this case, the judicial power of federal courts is

10   constitutionally restricted to 'cases' and 'controversies.' . . . Justiciability is the term of art employed

11   to give expression to this dual limitation placed upon federal courts by the case-and-controversy

12   doctrine."  *Flast v. Cohen*, 392 U.S. 83, 94 (1968).  "Because standing and ripeness pertain to

13   federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to

14   dismiss."  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).  "On a

15   motion to dismiss for lack of standing, a district court must accept as true all material allegations in

16   the complaint, and must construe the complaint in the nonmovant's favor."  *Id.* at 1121 (internal

17   citations omitted).  However, "[t]he party asserting federal subject matter jurisdiction bears the

18   burden of proving its existence."  *Id.* at 1222.

19           1.      Legal Standard for Ripeness

20           The doctrine of ripeness, a subset of justiciability, concerns "the appropriate timing of

21   judicial intervention."  *Renne v. Geary,* 501 U.S. 312, 320 (U.S. 1991).  One timing concern is

22   "whether the harm asserted has matured sufficiently to warrant judicial intervention."  *Warth v.*

23   *Seldin*, 422 U.S. 490, 499 (1975); *Pacific Legal Foundation v. State Energy Resources Conservation*

24   *& Dev. Com.*, 659 F.2d 903, 915 (9th Cir. 1981).   In the context of a private contract case, the Ninth

25   Circuit has held that "the appropriate standard for determining ripeness of private party contract

26   disputes is the traditional ripeness standard, namely, whether 'there is a substantial controversy,

27   between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

28   issuance of a declaratory judgment."  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th

United States District Court

For the Northern District of California

1  Cir. 2005).  More specifically, "[t]he 'central concern [of the ripeness inquiry] is whether the case

2  involves uncertain or contingent future events that may not occur as anticipated, or indeed may not

3  occur at all.'"  *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122-1123 (9th Cir.

4  2010) (citing *Richardson v. City and County of Honolulu* 124 F.3d 1150, 1160 (9th Cir. 1997)).

5       In *Chandler*, plaintiff sued his insurer over a reimbursement dispute after his car was rear-

6  ended.  The plaintiff had been partially reimbursed by the insurer of the other driver, but had not

7  sued that third party's insurer.  The court held that the plaintiff's claim was not ripe for adjudication

8  until he had attempted and failed to sue that third party, thus showing injury.  *Id.*  ("Plaintiff's claims

9  involve future events that are too uncertain and speculative to permit Plaintiff to proceed with his

10  lawsuit.").  Similarly, where a claim involves outcomes dependent on an uncertain event, such as the

11  resolution of another case, courts have dismissed the claim as unripe.  *See Bhatia v. Office of the*

12  *United States Atty*., No. CV-09-5581 SBA, 2011 U.S. Dist. LEXIS 36461 (N.D. Cal. Mar. 29, 2011)

13  (dismissing claims as unripe where injury was dependent on outcome of ongoing criminal case).

14       However, claims may be ripe for adjudication even where there is no immediately apparent

15  damage.  In *Robinson,* plaintiff and defendant were parties to a long-term lease which provided for

16  rent adjustment in the thirty-first and sixty-first years of the lease.  *Robinson*, 394 F.3d at 668.  The

17  parties disagreed as to their interpretation of this provision, and when they renegotiated the lease

18  they included this disagreement in a lease amendment.  When one of the parties tried to sell its

19  interest, it could not because of the disagreement.  The court agreed that their case was ripe for

20  decision.  *Id*. at 672.  A claim may also be ripe for adjudication where, although there were parallel

21  or future proceedings at issue, current damage is alleged.  *Tethys Bioscience, Inc. v. Mintz, Levin,*

22  *Cohn, Ferris, Glovsky & Popeo, P.C.*, No. C 09-5115 CW, 2010 U.S. Dist. LEXIS 55010, at *7

23  (N.D. Cal. 2010) ("Plaintiff pleads that it has suffered various forms of damage, including a decrease

24  in the value of its technology and business, arising from Defendants' alleged disclosure of its

25  confidential information. . . . That Plaintiff's harm could be enhanced or mitigated by the PTO's

26  decision does not render its claims unripe.").

27       2.    Application to This Case

28       In the instant case, Defendant argues that Plaintiff's claims are not ripe because they are

United States District Court

For the Northern District of California

based on Defendant's alleged failure to negotiate, which it was required to do once the lease expired. MTD at 8.  Because Defendant's obligation to negotiate did not arise until June 2011, and the parties have been negotiating since then, Defendant argues that the claim is not ripe.  In addition, Defendant argues that, contrary to Plaintiff's assertions, it has consistently provided for Plaintiff's access to the Sign Structure.  MTD at 8.

   a. <u>Breach of Contract</u>

  With respect to Plaintiff's breach of contract claim, Defendant appears to misconstrue Plaintiff's allegations.  Defendant portrays Plaintiff's allegations as solely concerning conduct that may appear in the future (*i.e.*, Defendant may refuse to negotiate in good faith or may refuse Plaintiff access to its sign).  *See* MTD at 8.  However, Plaintiff is not basing its allegations purely on whether or not Defendant will actually engage in good faith negotiations.  Rather, Plaintiff claims that "Defendant has [already] materially breached and repudiated its obligations under the Lease, including the implied covenant of good faith and fair dealing."  Compl. ¶ 28.  Plaintiff argues actual breach of material conditions of the lease, as well as anticipatory repudiation of the requirement to engage in good-faith negotiations and, it appears, a current and ongoing failure to act in good faith under the contract more generally.  *See* Compl. ¶¶ 14-21 (describing "belated[]" and "improper[]" assertions regarding Plaintiff's maintenance obligations and the parties' respective rights under the lease); Opp. at 7 (describing Bently's refusal to negotiate as "pretextual").

  Plaintiff provides specific examples of ways in which it alleges Defendant has already breached the Lease, including, *inter alia,* Defendant's application for a permit to perform repairs on the sign in violation of Plaintiff's exclusive permitting right, and Bently's refusal to allow CCO unconditional access to the sign.  Opp. at 4-5.  While Bently disputes CCO's assertion that Defendant has denied it access to the structure, that does not render Plaintiff's claim to the contrary speculative or uncertain.  As noted above, this Court must take Plaintiff's allegations as true on this motion to dismiss for lack of standing.  *Chandler,* 598 F.3d at 1121.  Because Plaintiff's contract allegations concern past and current, ongoing behavior, not just future behavior, they are ripe for adjudication.  *See Robinson*, 394 F.3d at 671-72; *Cf. St. Clair v. City of Chico*, 880 F.2d 199, 204 (9th Cir. 1989) (finding lack of ripeness where "Appellants failed to satisfy their burden of showing

1   that their application for a connection to the City's sewer system was rejected in a final, definitive

2   decision"); *Richardson v. City and County of Honolulu*, 124 F.3d 1150, 1160 (9th Cir. 1997)

3   (finding landowners' claim "that Ordinance 91-95 does not fully compensate them for the taking of

4   their property" unripe because they filed suit the same day the ordinance was enacted and "several

5   [non-self-executing] events must occur before any taking will occur").[1]

6         In addition to the current breaches alleged in the Complaint, Plaintiff also appears to make an

7   anticipatory repudiation claim. *See* Opp. at 8-9. Specifically, Plaintiff alleges that Defendant

8   provided unequivocal notice that it would refuse to negotiate in good faith for an extension of the

9   lease once it expired in May 2011. Compl. ¶ 17. More specifically, Plaintiff alleges that Bently

10   stated CCO "ha[d] breached its lease and ha[d] therefore lost the right to continue to keep its

11   structure on the property on a month to month basis for a year at the expiration date of this lease on

12   May 31, 2011." Compl. ¶ 17, Ex. B. Plaintiff claims that these statements and other conduct create

13   "uncertainty around how long Bently will continue to engage in such negotiations particularly given

14   its prior pretextual refusal to engage in such negotiations." Opp. at 7. For the reasons stated below

15   regarding the 12(b)(6) motion to dismiss, that claim appears insufficient to state a claim for relief.

16   However, since, as discussed above, Plaintiff has also made allegations about current behavior, this

17   deficiency is not fatal to jurisdiction.

18         b.   Declaratory Relief

19         Finally, Defendant argues that declaratory relief is inappropriate. MTD at 15. The

20   Declaratory Judgment Act provides that this Court "may declare the rights and other legal relations

21   of any interested party seeking such declaration, whether or not further relief is or could be sought."

22   28 U.S.C. § 2201. Determination of jurisdiction is a two-part test: first the court must determine

23   ripeness, and then the court must determine whether to exercise its discretion. *Dennis v. Wachovia*

24   *Bank*, FSB, No. 10-01596 CW, 2011 U.S. Dist. LEXIS 6810 (N.D. Cal. Jan. 19, 2011) (citing

25   *Robinson,* 394 F.3d at 669). Under the first part, "[t]he requirement that a case or controversy exist

26
27
28

---

[1] Defendant relies on *St. Clair* and *Richardson*, but the comparison is inapposite. In *St. Clair*, plaintiffs had not yet suffered any adverse action because their application had yet to be denied. Similarly, in *Richardson*, no taking had occurred and no negotiation for just compensation had occurred. By contrast, in the instant case, Plaintiff alleges that Bently has already breached its obligations under the contract.

under the Declaratory Judgment Act is identical to Article III's constitutional case or controversy requirement." *Robinson*, 394 F.3d at 669; *see Cal. County Superintendents of Schs. Educ. Ass'n v. Marzion*, 2009 U.S. Dist. LEXIS 20453 (N.D. Cal. Mar. 2, 2009) ("A case is ripe where the essential facts establishing the right to declaratory relief have already occurred.") (citing *Boeing Co. v. Cascade Corp*., 207 F.3d 1177, 1192 (9th Cir. 2000)).

Under the second part, the Court should address various factors as identified in *Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942), in determining whether to exercise its discretion, including: (1) "avoid[ing] needless determination of state law issues"; (2) "discourag[ing] litigants from filing declaratory actions as a means of forum shopping"; and (3) "avoid[ing] duplicative litigation." *Robinson,* 394 F.3d. at 672 (citing *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)).[2]  In deciding the first factor, courts have looked to whether there are parallel proceedings in state court.  *Continental Casualty Co. v. Robsac Indus*., 947 F.2d 1367, 1371 (9th Cir. 1991), *questioned on other grounds by Ryan ex rel. Syndicates & Ins. Cos. Subscribing to Policy PHP91-4699 v. Sea Air,* 902 F. Supp. 1064, 1066 (D. Alaska 1995).  For the second factor, courts have looked to whether plaintiffs "perceive a tactical advantage from litigating in a federal forum."  *Id.*  Finally, the third factor is also concerned with parallel litigation.  *Id.*

In the instant case, Defendant's sole argument against declaratory judgment jurisdiction is its contention that there is no actual case or controversy.  MTD at 15.  As noted above, this case is ripe under the Article III analysis because there is a dispute between the parties as to their respective rights and obligations under the lease; accordingly, the claim for declaratory relief should be allowed to go forward.  Specifically, as alleged, the parties dispute whether Plaintiff has sole rights under the lease to obtain permits, whether Plaintiff must have unconditional access to its sign structure, whether  Plaintiff has the right to remove the sign, and whether Plaintiff's failure to do

---

[2]  The *Robinson* court also noted other additional factors, including "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies." *Robinson,* 394 F.3d at 672, *citing Dizol,* 133 F.3d at 1225, n.5

United States District Court

For the Northern District of California

1   certain repairs could result in a breach of or forfeiture of rights under the lease.  *See* Opp. at 8.

2   Furthermore, the *Brillhart* factors point in favor of exercising jurisdiction.  Although contract

3   interpretation does depend on an interpretation of state law, there is no indication that there is

4   parallel state litigation, that there will be state (or other duplicative) litigation in the future, or that

5   Plaintiff has in any way engaged in forum shopping.  Thus, there is no particular reason why a

6   declaratory judgment would not be an appropriate remedy in this case.

7          Accordingly, the Court DENIES Defendant's 12(b)(1) motion.

8   B.     Failure to State a Claim

9          Defendant also moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure

10  12(b)(6).  MTD at 16.

11         1.     Standard

12         Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the

13  failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to

14  dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks*

15  *Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court

16  must take all allegations of material fact as true and construe them in the light most favorable to the

17  nonmoving party, although "conclusory allegations of law and unwarranted inferences are

18  insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

19  2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough

20  facts to state a claim to relief that is plausible on its face.'"  *Id*.  "A claim has facial plausibility when

21  the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

22  defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see*

23  *also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to

24  a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted

25  unlawfully."  Id.

26         2.     Analysis

27         Defendant argues that Plaintiff has not pled a cause of action.  More specifically, Defendant

28  argues that Plaintiff's allegations are conclusory and that the complaint lacks sufficient facts to

1    create a plausible legal theory of relief.  MTD at 16.  For many of the reasons stated above in the

2    analysis of ripeness, Plaintiff's complaint alleges sufficient facts to state a claim for relief.  Plaintiff

3    has made a significant number of very specific allegations.  These allegations, if true, would

4    certainly rise to the level of plausibility required by *Iqbal* and *Twombly*.

5                     a.    Declaratory Relief (Claim One)

6            For the reasons stated above in the analysis of the 12(b)(1) motion to dismiss, Plaintiff has

7    adequately pled a claim for declaratory relief.

8                     b.    Breach of Contract (Claim Two)

9            In order to establish a case for breach of contract in California., a party must show "(1) the

10    [existence of a] contract, (2) plaintiff's performance or excuse for non-performance, (3) defendant's

11    breach, and (4) damage to plaintiff therefrom.  *Cryotech Int'l, Inc. v. Technifab Prods.*, 2010 U.S.

12    Dist. LEXIS 40622 (N.D. Cal. Apr. 26, 2010) (*citing Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.

13    App. 3d 887 (1971).

14            As for the first prong, Plaintiff has clearly shown the existence of a contract, and this fact is

15    not disputed, although Plaintiff and Defendant dispute the meaning of the contract.  Under the

16    second and third prongs, Defendant argues that Plaintiff "breached its obligations under the

17    Lease. . . ." MTD at 4.  However, if Plaintiff's allegations are taken as true, Plaintiff has performed

18    under the contract and Defendant has not.  Specifically, as noted above, Plaintiff has alleged that

19    Defendant has blocked its access to its property and asserted permit and other rights of ownership

20    while repudiating Plaintiff's ownership rights.  Opp. at 11.

21            Finally, Defendant emphasizes that Plaintiff has not shown any damages.  However, the

22    stated purpose of the lease is for "maintaining, operating, improving . . . [and] repairing, an outdoor

23    advertising structure. . . ," and the lease "includes all rights of ingress and egress over the Property

24    necessary to legally access the Structure from a public roadway." Ex. A at ¶ 1.  Thus, if Plaintiff's

25    allegations are true, Plaintiff has pled that Defendant interfered with the stated purpose of the lease.

26    Finally, Plaintiff has alleged the fact of damage through interference with the Plaintiff's access to its

27    sign and enjoyment of the benefit of its bargain.  *See Runyan v. Pacific Air Industries, Inc.*, 2 Cal.3d

28    304, 316 n.15 (Cal. 1970) ("The award given in an action for damages compensates the party not in

United States District Court

For the Northern District of California

1    default for the loss of his 'expectational interest' – the benefit of his bargain which full performance

2    would have brought.") (citations omitted).

3                    c.    Anticipatory Repudiation (Claim Two)

4          A subset of Plaintiff's breach of contract claim is a claim that Defendant anticipatorily

5    repudiated the contract.  Defendant argues that no duty to negotiate arose until the expiration of the

6    lease and thus there can be no breach.  Plaintiff responds that Defendant has anticipatorily

7    repudiated its obligations under the lease by announcing that it did not intend to engage in good-

8    faith negotiations and by asserting that Plaintiff had forfeited its rights under the contract.  Compl.

9    ¶¶ 14, 17.

10         In California, "[w]hen a promisor repudiates a contract, the injured party faces an election of

11   remedies: he can treat the repudiation as an anticipatory breach and immediately seek damages for

12   breach of contract, thereby terminating the contractual relation between the parties, or he can treat

13   the repudiation as an empty threat, wait until the time for performance arrives and exercise his

14   remedies for actual breach if a breach does in fact occur at such time." *Taylor v. Johnston*, 15

15   Cal.3d 130, 137 (1975 ).  "A party asserting express anticipatory repudiation must demonstrate that

16   (1) the other party absolutely and unequivocally refused to perform and (2) it (the party asserting

17   anticipatory repudiation) effectuated the other party's breach by materially changing its position and

18   treating the repudiation as final." *Shahani v. United Commer. Bank*, C 11-00416 CRB, 2011 U.S.

19   Dist. LEXIS 106433, at *13 (N.D. Cal. Sept. 20, 2011) (*citing Guerrieri v. Severini*, 51 Cal. 2d 12,

20   19 (1958); *Wilton v. Clarke*, 27 Cal. App. 2d 1, 4 (1938)).

21         Plaintiff argues that in its May 3, 2011 letter, when Defendant wrote "Clear Channel has

22   breached its lease and has therefore lost the right to continue to keep its structure on the property on

23   a month to month basis for a year at the expiration date of this lease on May 31, 2011," Defendant

24   had "expressed its intent to refuse to comply with or honor Paragraph 5 of the lease, which calls for

25   month-to-month tenancy in combination with good faith negotiations for a lease extension . . . ."

26   Compl., ¶ 17.  Defendant characterizes this statement as merely a "suggest[ion] that this breach

27   could excuse any obligation to continue the tenancy on a month-to-month basis," MTD at 4.

28   Defendant points out that Plaintiff has not chosen to treat the breach as final, by continuing to

United States District Court
For the Northern District of California

1   negotiate under the terms of the lease.  Defendant thus argues that Plaintiff cannot state a claim both

2   because there was no clear repudiation and because the Plaintiff did not treat Defendant's actions as

3   repudiation.  Reply at 5-6.

4       In the instant case, Plaintiff has not sufficiently pled anticipatory repudiation.  Specifically,

5   even assuming that the May 3 letter constituted a clear repudiation of the contract, Plaintiff has not

6   materially changed its position and treated the repudiation as final.  *See Shahani v. United Commer.*

7   *Bank*, 2011 U.S. Dist. LEXIS 106433 at \*14-15 (finding no anticipatory repudiation where the

8   plaintiff "continued to act as though the contract were still in force"); *Taylor v. Johnston*, 15 Cal.3d

9   130, 136-37 (1975 ) ("[I]f the injured party disregards the repudiation and treats the contract as still

10  in force, and the repudiation is retracted prior to the time of performance, then the repudiation is

11  nullified and the injured party is left with his remedies, if any, invocable at the time of

12  performance."); *Cf. Guerrieri,* 51 Cal. 2d at 19 (finding a plaintiff had materially changed its

13  position when it purchased a higher price winery to obtain the wine it needed).  Plaintiff has alleged

14  no material change in position so as to indicate that it has treated the repudiation as final.  Rather, it

15  continues to assert the validity of the lease and Defendant's ongoing duty to act pursuant to that

16  lease.  Indeed, CCO's May 19 letter, attached to its complaint as Exhibit C, confirms that it

17  responded to Bently's "attempted termination of the lease" with efforts to negotiate and maintain the

18  parties' compliance with the lease.  *See* Compl., Ex. C at 2.  CCO also seeks specific performance of

19  the Lease.  Compl. at 10 ¶ 2.  Such a position is not consistent with a claim for anticipatory

20  repudiation, which terminates the contractual relationship between the parties.  That Bently has

21  negotiated and apparently continues to negotiate with CCO to renew the lease (*see* Opp. at 6),

22  further indicates that the terms of the contract are still in force.  *See Taylor*, 15 Cal.3d at 137-38

23  ("[I]f the injured party disregards the repudiation and treats the contract as still in force, and the

24  repudiation is retracted prior to the time of performance, then the repudiation is nullified and the

25  injured party is left with his remedies, if any, invocable at the time of performance.").  Accordingly,

26  while Plaintiff has adequately stated claims for breach of various terms of the contract and

27  declaratory relief, as discussed above, it has not so stated a claim for anticipatory repudiation.  The

28

United States District Court

For the Northern District of California

1    Court therefore **GRANTS** Defendant's motion to dismiss Plaintiff's anticipatory repudiation claim.

2    This dismissal is without prejudice.

3                    d.      Unjust Enrichment (Claim Three)

4          Finally, Defendant argues that Plaintiff fails to state a claim for unjust enrichment.  However,

5    Defendant offers no argument or analysis as to the standard for asserting unjust enrichment or how

6    Plaintiff has failed to meet it.  Rather, it simply asserts that "[n]one of [Plaintiff's] facts, if true

7    establish . . . any unjust enrichment by Bently."  MTD at 16.  Plaintiff argues that the same

8    allegations supporting its breach of contract claim also support its unjust enrichment claim.  Opp. at

9    11.

10         The elements of unjust enrichment are "receipt of a benefit and unjust retention of the benefit

11   at the expense of another."  *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000).  Under

12   California law, "unjust enrichment is an action in quasi-contract, which does not lie when an

13   enforceable, binding agreement exists defining the rights of the parties."  *Paracor Fin., Inc. v. GE*

14   *Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996).  "California courts appear to be split on whether

15   a stand alone cause of action for unjust enrichment is anything more than "a general principle,

16   underlying various legal doctrines and remedies."  *Mattel, Inc. v. MGA Entm't, Inc. & Consol.*

17   *Actions*, 782 F. Supp. 2d 911, 1014 (C.D. Cal. 2010) (noting that "stand alone claims for unjust

18   enrichment are simply redundant of relief already available under other existing law.").  Courts in

19   this District have held that California law permits unjust enrichment claims, in which "restitution

20   may be awarded either (1) in lieu of breach of contract damages, where an asserted contract is found

21   to be unenforceable or ineffective, or (2) where the defendant obtained a benefit from the plaintiff by

22   fraud, duress, conversion, or similar conduct, but the plaintiff has chosen not to sue in tort."  *Oracle*

23   *Corp. v. SAP AG*, 2008 WL 5234260, at *8 (N.D. Cal. Dec. 15, 2008) (citing *McBride v. Boughton*,

24   123 Cal. App. 4th 379, 388 (2004)).  Accordingly, even though a plaintiff may not ultimately prevail

25   under both unjust enrichment and breach of contract, it may plead both in the alternative.  *Id*. ("A

26   defendant is not entitled to have a cause of action dismissed for failure to state a claim simply

27   because it conflicts with another cause of action."); *see also Wolf v. Wells Fargo Bank, N.A.*, No.

28   C11–01337 WHA, 2011 WL 4831208, at *8 (N.D. Cal. Oct. 12, 2011) ("Restitution [under an unjust

United States District Court

For the Northern District of California

1    enrichment theory] may be awarded in lieu of breach of contract damages when the parties had an

2    express contract, but it was procured by fraud or is unenforceable or ineffective for some reason.")

3    (citing *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004)).

4           In the instant case, however, Plaintiff has not adequately alleged a restitution/unjust

5    enrichment claim because it has alleged no facts as to how the contract would be unenforceable,

6    since both parties appear to claim the contract is valid and enforceable.  *See Solano v. America's*

7    *Servicing Co.*, No. 2:10-cv-02426-GEB-GGH, 2011 WL 4500874, at *9 (E.D. Cal. Sept. 27, 2011)

8    (dismissing unjust enrichment claim where "[n]one of Plaintiffs' allegations plausibly suggest that

9    valid contracts did not exist between the parties."); *Cf. Parino v. BidRack, Inc.*, No. CV 11–3149

10   WHA, 2011 WL 4479462, at *6 (N.D. Cal. Sept. 26, 2011) ("[P]laintiff has properly alleged a claim

11   for fraud in the procuring of the alleged contract with BidRack.  As such, plaintiff has sufficiently

12   stated a claim for unjust enrichment in the alternative to her breach-of-contract claim.").

13   Defendant's motion to dismiss is therefore GRANTED as to the unjust enrichment claim, and

14   Plaintiff is granted leave to amend.

### III.    CONCLUSION

16          For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss for lack of

17   jurisdiction, **GRANTS** Defendant's motion to dismiss under 12(b)(6) as to the unjust enrichment

18   and anticipatory repudiation claims with leave to amend, and **DENIES** Defendant's motion to

19   dismiss under 12(b)(6) as to the breach of contract and declaratory relief claims.  Any amended

20   complaint shall be filed within 21 days of this Order.

21          This order disposes of Docket No. 21.

23          IT IS SO ORDERED.

25   Dated:  December 7, 2011

27                                                                    _____
                                                                       EDWARD M. CHEN
                                                                       United States District Judge